IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-2286-WJM-STV

LESLIE WILLIAM WELCH,
EVA WELCH, a minor child, by and through her next friend, LESLIE WILLIAM WELCH, and
HAYDEN WELCH, a minor child, by and through her next friend, LESLIE WILLIAM WELCH,

    Plaintiffs,

v.

JANE SAUNDERS, and
JOHN SPAW,

    Defendants.

---

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

Plaintiffs Leslie William Welch, Eva Welch, and Hayden Welch (collectively, "Plaintiffs") bring this action under 42 U.S.C. § 1983 against Defendants Jane Saunders and John Spaw (collectively, "Defendants") claiming violations of their rights under the Fourth and Fifth Amendments to the U.S. Constitution. (*See* ECF No. 30 ¶¶ 27, 29.) Specifically, this dispute centers on whether Defendants were acting pursuant to a valid court order on March 17, 2014, when they "directed Plaintiffs to depart and vacate their leasehold premises." (*Id.* ¶ 16.)

Before the Court are the following motions: (1) Plaintiffs' Motion for Partial Summary Judgment (ECF No. 52) and (2) Defendants' Motion for Summary Judgment ("Cross-Motion") (ECF No. 54). For the reasons set forth below, Defendants' Cross-

Motion is granted, and Plaintiffs' Motion for Partial Summary Judgment is denied.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

The following facts are undisputed, unless attributed to one party, or another, or otherwise noted.

At all times relevant to this action, Kathleen Mueller's[1] ex-husband, Kenneth Mueller, was the owner of a property located at 5035 McIntyre St., Golden CO 80401. (ECF No. 54 ¶ 4; ECF No. 55 ¶ 4; *see also* ECF No. 54-6 at 2.)  Plaintiff Leslie Welch leased the barn on the property pursuant to a written "Residential Lease Agreement" with Mr. Mueller. (ECF No. 30 ¶ 9; ECF No. 49 ¶ 9; *see also* ECF No. 54-6 at 2–5.)

On August 15, 2013, a misdemeanor criminal case was brought upon the allegations of Ms. Mueller that she was assaulted by Mr. Mueller. (ECF No. 30 ¶ 11; ECF No. 49 ¶ 11.) On August 17, 2013, a mandatory protection order was entered against Mr. Mueller (the "August Protection Order"). (ECF No. 54-1 at 2–3.) The August Protection Order named Ms. Mueller as the protected party and ordered that "no tenants and or caretakers employed by [Kenneth Mueller] [are] authorized to live on [the] property at 5035 McIntyre St. (*Id.* at ¶ 8.)  On October 4, 2013, the August Protection Order was modified to remove the above statement as to tenants and caretakers (the "October Protection Order"). (ECF No. 54-5 at 2–3.)

At all times relevant, Defendants were Deputy Sheriffs with the Jefferson County, Colorado Sheriff's Office. (ECF No. 54 ¶ 3; ECF No. 55 ¶ 3.)  On March 17, 2014, Defendants directed Plaintiffs "to vacate the property" (ECF No. 54 ¶ 6; ECF No. 55 ¶ 6) which, according to Plaintiffs, forced them to leave "behind the personal property that they were unable to remove prior to complying with" the Defendants' order (ECF No. 30 ¶ 16).

---

[1] When this action was filed Kathleen Mueller was a named defendant, however, Ms. Mueller was later dismissed from this case pursuant to the Court's May 26, 2016 Order. (ECF No. 46 at 17.)

3

Defendant Spaw's police report reflects that the Defendants believed they were acting pursuant to a state court order signed by the Honorable Thomas E. Vance. (ECF No. 54-2 at 4–5.) The police report further states that Ms. Mueller handed Defendant Spaw a copy of the mandatory protection order, referring to the August Protection Order. (*Id*. at 4.)[2] The police report also states that Defendant Spaw provided Mr. Welch with a copy of the August Protection Order and explained to him the content of the order, including the provision stating that no tenants are authorized to live on the property. (*Id*. at 4–5; *see also* ECF No. 55 ¶ 5.) Plaintiffs did in fact vacate the property later that evening. (ECF No. 54 ¶ 7; ECF No. 55 ¶ 7.)

Plaintiffs initiated this lawsuit on October 14, 2015, and filed a First Amended Complaint on February 8, 2016. (ECF Nos. 1, 30.) Defendants filed a Motion to Dismiss the First Amended Complaint on February 12, 2016. (ECF No. 31.) The Court granted in part and denied in part Defendants' Motion to Dismiss. (ECF No. 46.)

Plaintiffs' remaining "First Claim for Relief" incorporates sub-claims, including claims that: (1) Defendants deprived them of their "property rights without due process in violation of the Fifth Amendment," and (2) Defendants "seiz[ed Plaintiffs] property without [a] court order in violation of the Fourth Amendment[.]" (ECF No. 30 at 10 ¶ 27.)

On November 20, 2016, Plaintiffs filed their Motion for Partial Summary Judgment. (ECF No. 52.) On December 12, 2016, Defendants filed a Response to

---

[2] Defendant Spaw's police report also notes that he believed the August Protection Order "was amended on January 16, 2014." (ECF No. 54-2 at 4.) Defendant Spaw now clarifies in his declaration that "[a]t the time I met with Ms. Mueller, I believed that the protection order she provided was an amended protection order issued on January 16, 2014, because the court clerk had signed, stamped, and dated this certified copy of the protection order on January 16, 2014." (ECF No. 54-3 ¶ 5.)

4

Plaintiffs' Motion for Partial Summary Judgment.  (ECF No. 56.)  Plaintiffs filed their Reply on December 26, 2016.  (ECF No. 58.)

On November 21, 2016, Defendants filed their Cross-Motion for Summary Judgment.  (ECF No. 54.)  Plaintiffs responded on December 9, 2016 (ECF No. 55), and Defendants replied on December 23, 2017 (ECF No. 57).

### III.  ANALYSIS

Defendants contend that "the undisputed evidence shows that the [Defendants] are entitled to absolute [] immunity as well as qualified immunity with regard to Plaintiffs' remaining claim."  (ECF No. 54 at 2.)[3]  Because the Court concludes that Defendants are entitled to absolute immunity, the Court does not address Defendants' qualified immunity argument.

The Tenth Circuit has "held that '[j]ust as judges acting in their judicial capacity are absolutely immune from liability under section 1983, official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'"  *Moss*, 559 F.3d at 1163 (quoting *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990)).  Absolute immunity for such officials is needed to ensure that they can perform their official duties without the need to secure permanent legal counsel.  *Id*.  This, however, does not mean that an official carrying out a judicial order is always protected by absolute immunity.  *Id*.  ("[W]e have never held that the unquestioning execution of a judicial directive may

---

[3] "Absolute immunity," available to those executing court orders, is sometimes referred to as "quasi-judicial immunity."  *See Moss v. Kopp*, 559 F.3d 1155, 1163 n.9 (10th Cir. 2009).  This Court will use the terms interchangeably.

never provide a basis for liability against a state officer.") (internal quotations and citations omitted). Additionally, there are limits as to how unlawful a court order can be and still shield the officer who executed it from liability. *Id*.

Thus, for an officer acting pursuant to a court order to be entitled to absolute immunity the following prerequisites must be met: (1) "the judge issuing the disputed order must be immune from liability in his or her own right," (2) the court order must be "facially valid," (3) "the officials executing the order must act within the scope of their own jurisdiction," and (4) "the officials must only act as prescribed by the order in question." *Id*. at 1163–64.

### A. Judge's Immunity

As to the first factor, "a state official is not absolutely immune from damages arising from the execution of an order issued by a judge acting in the clear absence of all jurisdiction." *Id*. at 1163. However, a judge will not be found to be acting in clear absence of all jurisdiction even if the action was done in error, done maliciously, in excess of authority, or if the judge committed grave procedural errors. *See id.* at 1163–64.

Here, there is no evidence or allegation that Judge Thomas E. Vance acted in clear absence of all jurisdiction when he issued the August Protection Order. First, it is undisputed that on August 17, 2013, a mandatory protection order was issued by Judge Vance in an action commenced by Ms. Mueller against Mr. Mueller in Jefferson County Court, Case No. 2013M3955. (ECF No. 54 at 2; ECF No. 55 at 2.) Second, Defendants maintain, and Plaintiffs do not dispute, that as "a state county court judge,

Judge Vance has jurisdiction over state misdemeanor proceedings . . . which may include the issuance of a mandatory protection order" and a "protection order may include any other order the court deems appropriate to protect the safety of the alleged victim or witness." (ECF No. 54 at 5–6 (internal quotations and citations omitted).)

The Supreme Court directs courts that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge" and "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Mandatory protection orders are within Judge Vance's jurisdiction to issue as a Colorado county court judge. *See* Colo. Rev. Stat. §§ 13-6-106(1)(a), 18-1-1001 (establishing original criminal jurisdiction in Colorado county courts).

Therefore, the Court finds that Judge Vance was entitled to absolute immunity and the first factor set forth in *Moss* is met.

**B.     Facial Validity**

The Tenth Circuit has acknowledged that "even assuming that an order is infirm as a matter of state law, it may be facially valid, as 'facially valid' does not mean 'lawful,' and erroneous orders can be valid." *Moss*, 559 F.3d at 1165. The Tenth Circuit has further explained that "state officials 'must not be required to act as pseudo-appellate courts scrutinizing the orders of judges,' but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect." *Id*. (quoting *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir.

7

1989)). Moreover, the "executing officials are not to be called upon to answer for the legality of a decision which they are powerless to control, lest they become a lightning rod for harassing litigation aimed at judicial orders." *Henshaw v. Bliss*, 421 F. App'x 870, 872 (10th Cir. 2011) (internal quotations and citations omitted).

Defendants argue for a broad conception of facial validity because the unhesitating execution of court orders is essential to the judicial system's authority and function, and state officers subject to liability would be more likely to refuse to enforce court orders. (*See* ECF No. 57 at 4; see also *Moss*, 559 F.3d at 1165.)

Defendants contend that on March 17, 2014, Ms. Mueller provided them "with a facially valid mandatory protection order dated August 17, 2013." (ECF No. 54 at 6.) Defendants further contend that "[a]lthough Judge Vance modified the [August Protection Order] to remove the provision about tenants and caretakers, the [Defendants] were never made aware of the [October Protection Order] at the time they enforced the facially valid [August Protection Order] provided by [Ms.] Mueller." (*Id*.) Plaintiffs raise three arguments in response.

1. <u>Plaintiffs were not named as subject to the order</u>

Plaintiffs argue that the August Protection Order "was known to be ineffective as to Plaintiffs" because "Plaintiffs were not named as subject to the order" nor "does it cite any Colorado statute authorizing any court orders against persons not named as criminal defendants." (ECF No. 55 at 5.) In response, Defendants contend that "[a]lthough Plaintiffs' given names are not stated, it is undisputed that Mr. Welch was a tenant of Mr. Mueller and therefore the provision in the [August Protection Order] refers to Mr. Welch. The [Defendants'] understanding of this provision of the [August

Protection Order] was reasonable under these circumstances." (ECF No. 57 at 3.)

The Court cannot agree with Plaintiffs to the extent that they argue that the August Protection Order was "facially invalid" because they were not named parties in the underlying case or individually named in the August Protection Order. Rather, it is clear to the Court, after reading the August Protection Order in its entirety, that clause eight clearly pertains to Mr. Welch, an undisputed tenant of Mr. Mueller. (*See* ECF No. 54-1 ¶ 8.)

    2.    <u>Defendants were on notice of the superseding order</u>

Plaintiffs argue that the Defendants knew or were "on notice" that the August Protection Order had been superseded by the October Protection Order. (*See* ECF No. 55 at 3–4). To support their argument, Plaintiffs note that Defendant Spaw's police report states that the "order was amended on January 16, 2014," and point to Mr. Welch's affidavit, which states that "[i]t should be noted that Deputy Jane Saunders was on notice of the two orders[.]" (ECF No. 55 at 4 (citing ECF No. 54-7 at 6); ECF No. 52-1 ¶ 4.)

First, as noted above, Defendant Spaw clarifies in his declaration that his "belief that the [August Protection Order] had been amended on January 16, 2014, was the result of the court clerk's signature, stamp, and date on a copy of the [certified August Protection Order]. (ECF No. 57 at 2 (citing ECF No. 54-3 ¶ 5).) Second, the Court finds that the evidentiary record put forward by Mr. Welch in the form of his own affidavit is insufficient to defeat summary judgment. The averments in Mr. Welch's affidavit are too vague and conclusory to create a disputed issue of fact, especially given their lack of support from any documentary or other evidence. Plaintiff's own statements about

9

what he believes Defendants knew do not, without more, create a genuine issue of fact in light of Defendants' deposition testimony and declarations detailing that neither Deputy had any knowledge of the October Protection Order at the time of the March 17, 2014 incident. (*See* ECF Nos. 54-3, 54-4, 54-7.) Further, Mr. Welch's affidavit fails to establish that he has personal knowledge of the facts so asserted. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (recognizing district court's discretion to disregard affidavit statements not grounded on personal knowledge).

3. Defendants failed to verify the scope of the order

Lastly, Plaintiffs argue that "[n]otwithstanding this fact [that Defendants had knowledge of the October Protection Order], they proceeded to rely upon language contained only in the [August Protection Order], failing or refusing to verify the scope of the order then in effect." (ECF No. 55 at 4.) Plaintiffs further contend that "Colorado maintains a registry of protection orders" and that "no reasonable officer could rely upon such an order some seven months after its issuance without verifying the order's status with the issuing court or, at least, the registry." (ECF No. 58 at 3 (citing Colo. Rev. Stat. § 18-6-803.7).)

Defendants respond that "Plaintiffs do not cite any case law holding that Deputies [have] an obligation to investigate the legitimacy of facially valid" court orders and that such a duty "would impose a substantial and undue burden on officers in the form of time and resources to investigate every single order for validity." (ECF No. 54 at 13–14.)

10

The Court's independent research has found no case law supporting a finding that deputies have an affirmative duty to investigate the scope and validity of mandatory protection orders. Therefore, the Court concludes that the court order in this case meets the facial validity requirement, and accordingly Defendants have satisfied this *Moss* factor.

**C.     Within the Scope of the Official's Jurisdiction**

Quasi-judicial absolute immunity will not attach to state officials acting outside the scope of their jurisdiction. *See Turney*, 898 F.2d at 1474. Here, Colorado statutory law directs sheriff's deputies, such as Defendants Spaw and Saunders, to execute judicial orders. *See* Colo. Rev. Stat. § 30-10-515 ("The sheriff, in person or by his undersheriff or deputy, shall serve and execute, according to law, all processes, writs, precepts, and orders issued or made by lawful authority and to him directed, and shall serve the several courts of record held in his county.").

Further, Defendants may have faced contempt if they had refused to execute the order at issue in this case. *See* Colo. R. Civ. P. 107(a)(1) (contempt defined as "resistance by any person to or interference with any lawful writ, process, or order of the court"); *see also Mainland v. People*, 111 Colo. 198, 202 (Colo. 1973) ("The powers and duties of sheriffs and their deputies, while acting as court officers, are defined by statute, rule, and order, and no descretion (*sic*) is vested in them to disobey.").

The Court finds that Defendants obeyed the statute and executed Judge Vance's order, thus it cannot be said that they acted outside the scope of their jurisdiction.

**D.     Act in a Manner Prescribed by the Order**

The last element necessary for finding absolute immunity requires the official to act only as prescribed by the order in question. *Moss*, 559 F.3d at 1163.

Here, the August Protection Order ordered, in part, the following: "no tenants and or caretakers employed by [Kenneth Mueller] [are] authorized to live on [the] property at 5035 McIntyre St." (ECF No. 54-1 ¶ 8.) The parties do not dispute that on March 17, 2014, Plaintiffs were tenants of Mr. Mueller's living in the barn residence at 5035 McIntyre St. (ECF No. 54 ¶ 4; ECF No. 55 ¶ 4.) The parties also do not dispute that Defendants asked Mr. Welch and his family to vacate the property on March 17, 2014, and that Plaintiffs did so vacate later that evening. (ECF No. 54 ¶¶ 6–7; ECF No. 55 ¶¶ 6–7.) Accordingly, the Court finds that the undisputed evidence shows that the Defendants' actions were within the clear confines of the August Protection Order.

In finding that Defendants have satisfied all the necessary elements of absolute immunity, this Court holds that Defendants are entitled to absolute immunity for all claims asserted against them in their individual capacities. Because the Court finds that the Defendants are entitled to absolute immunity, Plaintiffs' Motion for Partial Summary Judgment fails as a necessary consequence.[4] Accordingly, the Court grants

---

[4] In Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs contend that they "were excluded from their residential leasehold without notice and an opportunity for hearing." (ECF No. 52 at 7.) Defendants admit "that the state district court may have violated Plaintiffs' procedural due process rights in issuing the [August Protection Order] with the provision preventing tenants and/or caretakers of Mr. Mueller from living on the property. However, this error should not and cannot be attributed to the Deputies who were simply relying on a facially valid court order." (ECF No. 56 at 6.) The Court agrees with Defendants that they should not be "required to evaluate the legality of a decision issued by a judge trained in the law and authorized to issue such orders." *Henshaw*, 421 F. App'x at 872 (internal citations omitted).

summary judgment on Plaintiffs' "First Claim for Relief" as to all Defendants.

## IV. CONCLUSION

For the reasons set forth above the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 54) is GRANTED;

2. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 52) is DENIED;

3. The Clerk shall enter Judgment in favor of Defendants on all claims; and

4. Costs shall be taxed against Plaintiffs.

Dated this 11th of May, 2017.

BY THE COURT:

William J. Martinez
United States District Judge